1  HONORABLE RONALD B. LEIGHTON

2

3

4

5

6  UNITED STATES DISTRICT COURT
7  WESTERN DISTRICT OF WASHINGTON
   AT TACOMA
8
   MICHAEL ELLIOTT,                          CASE NO. C14-5054 RBL
9
                          Plaintiff,          ORDER ON PLAINTIFF'S MOTION
10                                            FOR ATTORNEYS' FEES
           v.
11                                            [DKT. #121]
    BNSF RAILWAY COMPANY,
12
                          Defendant.
13

14         THIS MATTER is before the Court on Plaintiff Elliott's Motion for Fees and Non-

15  taxable costs. [Dkt. #121]

16         Elliott seeks[1] compensation for 1112.6 hours of attorney time and 182.5 hours of

17  paralegal time for a total fee award of $427,992.95, and $26,686.94 in non-taxable costs:

18

19

20

21  _____

22         [1] Although filing notice of appeal generally divests the district court of jurisdiction over
    the issues on appeal, the district court retains jurisdiction over collateral matters not involved in
23  the appeal, such as attorneys' fees awards. *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d
    1228, 1237 (10th Cir. 1998); *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957
24  (9th Cir. 1983).

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| James Vucinovich | 318.2 | $425 | $135,235.00 |
| Sara Amies /Stephen Teller | 674.60 | $350 / $400 | $236,897.95 |
| Roy T.J. Stegena | 82.8 | $325 | $26,910.00 |
| Douglas Rossi | 21 | $300 | $6,300.00 |
| Michael Merrick | 16 | $275 | $4,400.00 |
| TOTAL ATTORNEYS' FEES | | | $409,742.95 |

Paralegal fees:

| | | | |
|------|-------|------|-------|
| Cristina Woodward 182.5 hrs. at $100 / hr. | | | $18,250.00 |

Out-of-pocket litigation costs:

| | | |
|------|-------|-------|
| Rossi Vucinovich PC | $16,811.21 | |
| Teller & Associates | $9,875.73 | |
| Total out-of-pocket | | $26,686.94 |

**TOTAL FEES AND COSTS**      **$454,679.89**

BNSF opposes the fee award, arguing that it is untimely[2] and excessive in both rates and hours sought. It argues that the case did not require two law firms and six attorneys, that the time is duplicative, and that the attorneys' practice of "block billing" alone should result in a

---

[2] Rule 54 requires a fee application within 14 days of the judgment. Elliott's application was seven days late. He seeks an enlargement of the time for filing under Local Rule 7. BNSF argues that the claimed calendaring mistake is not "*excusable* neglect" and asks that the court deny the fee application out of hand. It does not (and could not) claim prejudice. The court will consider the untimely application.

1 | 20% fee reduction. It disputes some of the time the second chair attorney spent in depositions,

2 | and the amount spent in preparing the cost bill. Overall, it seeks more than a 50% reduction,

3 | from the more than $425,000 requested to "no more than $200,000."

4 | **A. Fee Application Standard.**

5 | The first step in determining reasonable fees is to calculate the lodestar figure, by taking

6 | the number of hours reasonably expended on the litigation and multiplying it by the appropriate

7 | hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court should exclude

8 | overstaffed, redundant, or unnecessary time. *Id.* at 434. The Court must also consider the extent

9 | of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at

10 | 440.

11 | After determining the lodestar figure, the Court should then determine whether to adjust

12 | the lodestar figure up or down, based on factors not subsumed in the lodestar figure. These

13 | factors[3] were adopted in this Circuit by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70

14 | (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The applicability of the sixth (whether the fee

15 | is fixed or contingent) and tenth (the "undesirability " of the case) *Kerr* factors is doubtful after

16 | *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Davis v. City & County of San*

17 | *Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345

18 | (9th Cir. 1993)(fixed vs. contingent nature of fee is not to be considered). Additionally,

19 |

20 | ───────────────

21 | [3] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion

22 | of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,

23 | and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras*

24 | *Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

1  #numerous courts have subsequently held that the bulk of these factors are subsumed in the

2  lodestar calculation.  *See, for example, Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

3       In any event, the lodestar calculation is presumptively reasonable, and adjustments (up

4  are down) are appropriate only in rare and exceptional cases. *Id.*, *see also Pennsylvania v.*

5  *Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

6       **B. Reasonable Hourly Rates.**

7       BNSF's first dispute is with the hourly rates sought by Elliott's attorneys.  It argues that a

8  different court in this District last year determined in an FRSA case that hourly rates of $400 for

9  the lead attorney, and $325, $275, and $250 for other attorneys, was reasonable (and, by

10 implication, that a higher amount in this case is not).  *See Wallis v. BNSF*, 2015 WL 1648472

11 (Cause No. C13-0040TSZ (April 23, 2014)).    The lead attorney there sought $600 per hour, and

12 Wallis sought roughly $375,000 in fees and $140,000 in costs ($515,000 total), based on a

13 $20,000 jury verdict.

14      Judge Zilly awarded a "top rate" of $400 per hour, and $231,000 in fees and $47,000 in

15 costs ($278,000 total)—a percentage and dollar reduction that, it must be noted, is far less than

16 the one BNSF seeks in *this* case, which resulted in a $1,250,000 jury verdict.

17      Elliott has provided expert testimony that the hourly rate sought by the attorneys in this

18 case are reasonable.  The rates are high, but not higher than this Court has awarded in similar

19 plaintiffs' employment cases.  Another judge's year-old determination of reasonable rates in a

20 different case with different lawyers and a dramatically different result is not conclusive as to the

21 reasonableness of the rates sought in this case.

22      The rates sought are reasonable, and the court will award them for the hours reasonably

23 expended on this case.

24

**C. Reasonable Number of Hours.**

BNSF's second (and primary) dispute with Elliott's fee application is that the hours sought are not reasonable: he had too many lawyers, and too many of them were assigned to each task.   It complains that their time-keeping records included "block billing" (lumping multiple tasks into a single time entry), that time was recorded in quarter hour increments, and that the records were, in places, "confusing."

By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been "more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).   Nevertheless, in determining the reasonable number of hours, the Court must exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

**1.    Block Billing.**

On the issue of block billing alone, BNSF seeks a flat 20% reduction in the fees requested, based in part on a different Judge Zilly case that reduced the requested fees by 15% on this basis.   The practice of block billing is not optimum, but the claim that it automatically results in a 20% overcharge is simply unsupportable.   Insurance companies and many other clients, will not tolerate the practice, at all.   But BNSF is not in the same position to demand precise time-keeping as is an attorney's own client.   The claim that block billing cannot as a matter of law support a fee award without a flat reduction is not correct.   In fact, Judge Zilly rejected such a claim in *Wallis*: "Although some of Plaintiff's attorneys occasionally used block billing or provided time entries lacking detail, overall the Court finds that Plaintiff has provided sufficient documentation in support of her fee request. The Court declines to reduce the fee award on the basis of inadequate time records." *Wallis* at *7.

The nature of the billing records alone does not warrant a blanket reduction, and certainly not the 20% reduction sought.

## 2. Quarter Hour Increments.

BNSF's second major complaint is that in addition to block billing, Elliott's attorneys billed in 15 minute increments, rather than the more traditional (but also distasteful, to a different kind of client) six minute increments. This complaint facially and necessarily over-laps the "inadequate billing practices warrant a 20% reduction" argument rejected above. Nevertheless, BNSF advocates for an *additional* "across the board" 20% reduction on all time entries that were recorded in quarter, rather than tenths, of an hour (which is most of them).

And it does so without actually challenging the time Elliott's attorneys actually spent—it recites only that, in a different case, a different judge agreed that specific tasks were significantly over-billed. BNSF has made no such showing here, and *Welch* is not authority for the proposition that billing in quarter hours necessarily results in 20% over-billing and a corresponding 20% across the board fee reduction.

The nature of the billing records alone does not warrant a blanket reduction, and certainly not the 20% reduction sought.

## 3. Duplicative Work.

BNSF argues that Elliott over-staffed his case and that his six attorneys (from two firms, both in this state) unreasonably duplicated work. The Court will address specific examples of duplicative work below, but it must be noted that BNSF has *seven* attorneys of record in this case, from *three* firms or entities, in *two* states. It is likely that BNSF's legal team spent more on this case that Elliott's attorneys claim, and it is a certainty that it spent more than BNSF suggests Elliott's attorneys should receive.

BNSF argues that second chair attorney Amies' trial time (43.25 hours @ $325 per hour= $14,056) should be reduced 50% ($7028) because she did not question any witnesses or argue.  It is not necessarily unreasonable to have a second chair at depositions or trial—BNSF also had two attorneys at trial.

But the burden is Elliott's to demonstrate that the fees he seeks were reasonably incurred, and some of the work performed by Amies was duplicative.  The Court will reduce Amies' trial time fee request by 25%, or **$3514**.

**4.  Attorneys Rossi and Merrick**

BNSF also argues that attorney Rossi's participation (21 hours @ $300 per hour, much of it travel) was unnecessary and therefore unreasonable.  It argues that Merrick's contribution (16 @ $275) was minimal and duplicative.   It asks the Court to reduce the fee award by 100% of this amount (a total of $10,700). The Rossi and Merrick time is fairly excluded, and Elliott's fee award will be reduced by **$10,700**.

**5.  Fees for Fee Application and Cost Bill.**

Elliot seeks $13050.75 in reimbursement for 47.6 total attorney and paralegal hours for preparation of the attorneys' fee application and cost bill.   BNSF argues that this request is excessive, because such motions are "boilerplate" and costs bills are a "form pleading."  It argues that the request should be reduced 75%.  The fee application was not boilerplate, but $13,000 in time is not reasonable for it preparation.  The court will reduce these fees 50%, or **$6525.**

**6.  Reinstatement claim.**

Elliot seeks fees for all the work performed on the case. BNSF argues he should not be awarded fees incurred in unsuccessful pursuit of his reinstatement claim.  BNSF claims that a total of 8.5 hours (among four attorneys at varying rates) should not be awarded.

1    It is true that the reinstatement claim was wisely abandoned, in light of the front pay jury

2  instruction that both parties proposed, and large verdict.  The Court will reduce the attorneys' fee

3  award for this claim by 8.5 hours at $400 per hour, or **$3400**.

4    **7.  Other *Kerr* Adjustments.**

5    The final step in determining a reasonable attorneys' fee is whether to enhance or reduce

6  the lodestar figure based on the Court's evaluation of those *Kerr* factors not subsumed in the

7  lodestar calculation.  *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The analysis

8  above and the resulting lodestar amount take many of the relevant factors into account.  Neither

9  party specifically addresses these factors, nor seeks an additional adjustment based on them.  The

10  lodestar fee as adjusted above takes these factors into account and the court will not make further

11  adjustments.

12    ***

13    The Court will therefore award the total attorneys' fees ($409,743) and paralegal fees

14  ($18,250) requested, *minus* the adjustments above ($24,139), for a total fee award of **$403,854**.

15    **D.  Non-taxable Costs.**

16    Elliott seeks a total of $26,687 in non-taxable, out of pocket expenses.  BNSF argues,

17  correctly, that the fees paid to an outside attorney and a CPA for opinions on the fee application

18  and the "gross up" analysis[4], respectively, should not be awarded.  This total is **$4500**.  It also

19  seeks a reduction for costs reflecting computerized legal research ($ 405), "working" meals

20  ($211), and a "focus group" ($1800).  The Court agrees that these costs are not fairly attributable

21  to one's opponent, and declines to award them.  It will instead award **$19,771** in out of pocket

22  expenses.

23  ――――――――――――――――――

24    [4] The Motion [Dkt. #128] related to this effort is denied in a separate order.

**E. Conclusion**

The Clerk shall enter a supplemental judgment awarding Elliott **$403,854** in attorneys' fees and **$19,771** in costs, for a total of **$423,625.**

IT IS SO ORDERED.

Dated this 2nd day of November, 2015.

Ronald B. Leighton
United States District Judge